GAIL WEST MEDLIN, GUARDIAN AD LITEM FOR PAMELA LYNN MEDLIN, PLAIN-
TIFF v. VANN J. BASS, INDIVIDUALLY AND AS AGENT FOR FRANKLIN COUN-
TY BOARD OF EDUCATION; LUTHER BALDWIN, INDIVIDUALLY AND AS
AGENT FOR FRANKLIN COUNTY BOARD OF EDUCATION; WARREN W.
SMITH, FRANKLIN COUNTY BOARD OF EDUCATION; RUSSELL E.
ALLEN, INDIVIDUALLY AND AS AGENT FOR FRANKLIN COUNTY BOARD OF
EDUCATION; FRANKLIN COUNTY BOARD OF EDUCATION, DEFENDANTS

No. 889SC1079

(Filed 5 December 1989)

1. **Schools § 12.1 (NCI3d)— superintendent—no negligent in-
vestigation, hiring, and supervision of principal**

The trial court properly entered summary judgment for
defendant superintendent of schools in plaintiff's action based
on negligent investigation, hiring, and supervision of a prin-
cipal where the evidence showed that the principal's employ-
ment application was investigated according to policy; there
was no evidence that defendant knew about a ten year old
allegation of sexual assault of a student which had been made
against the principal in another school district; plaintiff did
not present evidence that defendant could reasonably have
found out about the incident by conducting a more thorough
investigation; defendant completed the required yearly evalua-
tions of the principal; and plaintiff presented no evidence that
defendant knew of the alleged assaults of a female student
in his school and failed to act.

**Am Jur 2d, Municipal, County, School, and State Tort
Liability §§ 524, 633-636.**

2. **Schools § 12.1 (NCI3d)— assistant superintendent—no negligent
investigation, hiring, and supervision of principal**

The trial court properly entered summary judgment for
defendant assistant superintendent of schools in plaintiff's ac-
tion based on negligent investigation, hiring, and supervision
of a principal where the undisputed evidence showed that
defendant was not employed by the school system until 12
years after the principal was hired, and during the time defend-
ant served as assistant superintendent, his duties did not in-
clude supervision of principals.

**Am Jur 2d, Municipal, County, Schools, and State Tort
Liability §§ 524, 633-636.**

MEDLIN v. BASS

[96 N.C. App. 410 (1989)]

3.  **Schools § 13 (NCI3d) — truant officer — no negligence in investigation of child's truancy problems — no intentional infliction of emotional distress**

The trial court properly granted summary judgment for defendant truant officer on plaintiff's claim of negligence in defendant's performance of his duty to investigate a child's truancy problems and on plaintiff's claim of intentional infliction of emotional distress, since there was no evidence that anyone at any time indicated to defendant that the child was missing school because of an alleged assault by her school principal; the infliction of emotional distress claim was based on defendant's instigating the filing of a juvenile petition against the child because of her truancy problems; plaintiff presented no evidence of any element of this tort; and there was no evidence that defendant knew of the alleged assault or that he intended to cause severe emotional distress to the child.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 524, 633-636.**

4.  **Schools § 4.1 (NCI3d) — principal's assaults on student — acts not imputed to school board**

The trial court properly entered summary judgment for defendant board of education based on the imputed acts of a school principal in assaulting a student where there was no claim of express authorization of the principal's alleged torts; there was no ratification of the principal's alleged acts; defendant had no prior notice of the principal's conduct and immediately sought his resignation upon learning of plaintiff's allegations; and there were no issues of material fact as to whether the principal was acting in the scope of his employment and in furtherance of defendant's business when the alleged assaults occurred.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 524, 633-636.**

Judge PHILLIPS dissenting.

APPEAL by plaintiff from Order entered 26 April 1988 in Superior Court, FRANKLIN County, by *Judge Jack B. Crawley.* Heard in the Court of Appeals 9 May 1989.

The trial court granted summary judgment in favor of defend-
ants Luther Baldwin, Warren W. Smith, Russell E. Allen, and the
Franklin County Board of Education. Plaintiff appeals.

*Kirk, Gay, Kirk, Gwynn & Howell, by Andy W. Gay and
Katherine McCraw, for plaintiff-appellant.*

*Young, Moore, Henderson & Alvis, P.A., by David P. Sousa
and Theodore S. Danchi, for defendants-appellees Warren W. Smith,
Russell E. Allen and Luther Baldwin.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by David
H. Batten; and Davis, Sturges & Tomlinson, by Charles M. Davis,
for defendant-appellee Franklin County Board of Education.*

LEWIS, Judge.

By complaint and amended complaint, plaintiff sets forth several
claims for relief. Plaintiff alleges that during the 1984-85 school
year Vann J. Bass (Bass) was the principal of Bunn Elementary
School in Franklin County and an employee of the Franklin County
public schools. Warren W. Smith (Smith) was employed by the
Franklin County Board of Education (Board of Education) as the
superintendent of the Board of Education. The Board of Education
employed Russell E. Allen (Allen) as its Assistant Superintendent
and Luther Baldwin (Baldwin) as a truancy officer. The complaint
also alleges the Board of Education has waived its liability for
damages from the negligence of its employees by purchasing liabili-
ty insurance. The complaint alleges that Bass twice assaulted Pamela
Lynn Medlin, a nine-year-old, fourth grade student, during the first
few days of the 1984-85 school year.

Plaintiff seeks to recover from Bass for assault and battery,
false imprisonment, intentional infliction of emotional distress,
negligent furnishing of services, negligent failure to report child
abuse and breach of fiduciary duty. The complaint sets forth claims
for relief against Smith and Allen for negligent investigation, hiring
and supervising of Bass. Plaintiff seeks to recover for Baldwin's
alleged intentional infliction of emotional distress and failure to
properly investigate Pamela Medlin's school attendance problems.
The complaint also alleges that all actions by Bass, Smith, Allen
and Baldwin should be attributed to the Board of Education and
asserts each claim for relief previously described against the Board
of Education.

Plaintiff seeks in excess of $10,000.00 compensatory damages and punitive damages in excess of $10,000.00. Plaintiff also requests attorneys' fees and costs. On 26 April 1988, the trial court granted summary judgment in favor of Smith, Allen, Baldwin and the Board of Education. The claims against Bass remain.

Plaintiff appeals on the grounds that there were genuine issues of material fact which should not have been decided on a motion for summary judgment. Defendants Smith, Allen, Baldwin and the Board of Education assign error to the trial court's consideration of a certain supplemental affidavit. We have reviewed plaintiff's assignment of error and conclude summary judgment was properly granted as to these defendants. Having reached this conclusion, we do not address defendants' assignment of error.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). A defendant may be entitled to summary judgment if he can show "there is no genuine issue of material fact concerning an essential element of the claimant's claim for relief and that the claimant cannot prove the existence of that element." *Best v. Perry*, 41 N.C. App. 107, 109, 254 S.E.2d 281, 283 (1979). "Where there is no genuine issue as to the facts, the presence of important or difficult questions of law is no barrier to the granting of summary judgment." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971).

The evidence presented at the hearing on the motion for summary judgment showed that before working in Franklin County Bass had been employed as a teacher and principal in Rocky Mount, North Carolina, for approximately ten years. In June 1968, Bass sexually assaulted a male junior high school student. Bass testified that he was confronted by Rocky Mount school Superintendent O. C. Fields (Fields) about the incident and decided to resign. Bass does not recall discussing the assault with anyone other than Fields and the student's father, and Bass did not admit or deny the assault to Fields. The student testified that he and his father did not attempt to make the incident the focus of public attention. Following his resignation from the Rocky Mount schools, Bass moved to his mother's home in Franklin County and did not work until he applied with the Franklin County schools on 2 January 1969.

Bass testified that he applied to teach at the request of Franklin County principal W. H. Kelly (Kelly). The employment application asked for three references. Margaret Holmes (Holmes), Associate Superintendent of Franklin County schools in 1969, testified that in 1969 it was the policy in that county to contact two of the three references listed on the employment application, preferably references with the most job-related contact. Holmes contacted one of Bass' references, Millie Moore, by telephone and was told Bass left Rocky Mount for health reasons which would not affect his performance in Franklin County. On 7 February, Smith mailed reference sheets to Millie Moore and another of the references listed on Bass' application, Ella Moore. The completed reference sheets were not received by Franklin County schools until 11 and 13 February 1969.

On 7 January 1969, Smith informed Bass that the Board of Education had elected Bass to begin teaching at Bunn High School on 3 February 1969. On 19 May 1969, Bass applied for a principal position in Franklin County and was hired for this position in June. No reference sheets were requested when Bass was hired as principal because an investigation had been done a few months earlier in connection with his teaching application.

In late February or early March 1969, after Bass was hired as a teacher but before he became principal, Kelly asked Holmes to investigate a rumor that Bass was a homosexual. Holmes visited Fields, the Rocky Mount school superintendent and the third reference listed on Bass' employment application. Holmes testified that in response to specific questions, Fields stated he had no knowledge or record of Bass' homosexuality. Smith knew Holmes went to Rocky Mount to investigate the rumor and was informed of the substance of her investigation. Fields testified he does not remember Holmes asking about Bass' alleged homosexuality but he does recall talking with Smith personally about Bass' performance as a principal.

Bass resigned his principal position in Franklin County following a complaint to the Board of Education that he had assaulted Pamela. Previously Bass had discussed Pamela's attendance problems with her family but had never received any indication that Pamela's attendance problems were related to him personally.

[1] The claims against Smith as superintendent of schools and agent of the Board of Education are based on negligent investiga-

**MEDLIN v. BASS**

[96 N.C. App. 410 (1989)]

tion, hiring and supervision of Bass. Plaintiff contends that since the evidence shows Bass left his position in Rocky Mount after the first alleged assault incident, then Smith negligently investigated and hired Bass and summary judgment was not proper as to these claims. However, the evidence shows that Bass' employment application was investigated according to policy and there is no evidence that Smith was informed of or knew about the Rocky Mount incident when Bass was hired. Plaintiff did not present evidence that Smith knew of the Rocky Mount incident or that he could reasonably have found out about it by conducting a more thorough investigation. The evidence also shows that Smith properly supervised Bass. Smith completed the required yearly evaluations, and plaintiff presented no evidence that Smith knew of the alleged assaults on Pamela and failed to act. The trial court did not err in granting summary judgment as to those claims based on Smith's actions.

[2]   The claims against Allen are also based on negligent investigation, hiring and supervision of Bass. The undisputed evidence shows that Allen was not employed by the Franklin County School System until 12 years after Bass was hired. Summary judgment on the claims for negligent hiring and investigation were proper. As to the claim for negligent supervision of Bass, Allen testified that during the period he served as Assistant Superintendent his duties did not include supervision of principals. Summary judgment on this claim was proper.

[3]   Plaintiff alleges Baldwin was negligent in performing his duty to investigate Pamela's truancy problems. There is no evidence that anyone at any time indicated to Baldwin that Pamela was missing school because of the alleged assault by Bass. The evidence shows Baldwin performed his duty, and summary judgment was proper on this claim. Plaintiff also brought a claim against Baldwin for intentional infliction of emotional distress. The claim is based on Baldwin's actions of instigating the filing of a juvenile petition against Pamela because of her truancy problems. The elements of this tort are (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). Plaintiff has not presented evidence of any element of this tort. There is no evidence Baldwin knew of the alleged assault or that he intended to cause severe emotional distress to Pamela. The evidence showed adherence to his job expectations and requirements. Summary judgment on this claim was proper.

MEDLIN v. BASS

[96 N.C. App. 410 (1989)]

The claims against the Board of Education are based on the imputed acts of Smith, Allen, Baldwin and Bass. As discussed above, summary judgment was properly granted on the claims against Smith, Allen and Baldwin, and there is no liability on the basis of actions of these employees.

[4] As to the claims based on Bass' alleged conduct, summary judgment was also proper. An employer can be held vicariously liable for the torts of its employees in three situations: (1) when the employer expressly authorizes the employee's act; (2) when the employee's act is committed in the scope of his employment and in furtherance of the employer's business; or (3) when the employer ratifies the employee's act. *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 140 (1986). In this case, there is no claim of express authorization of Bass' alleged torts. Also, there was no ratification of Bass' alleged acts; the Board of Education had no prior notice of Bass' conduct and immediately sought Bass' resignation upon learning of plaintiff's allegations. Finally, there are no issues of material fact as to whether Bass was acting in the scope of his employment and in furtherance of the Board of Education's business; Bass was not performing the business he was employed to do when the alleged assaults occurred. Summary judgment as to those claims against the school board was proper.

Affirmed.

Judge BECTON concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion whether defendant Bass's alleged abuse of plaintiff occurred within the scope of his employment by the school board is a question of fact, not law, and the claim against the board on that ground was erroneously dismissed. Bass's scope of employment was not confined to doing good, as the majority implicitly holds. As principal his job was to operate the school and control the children while school was in session; and according to plaintiff's evidence, his abuse of her occurred during school hours in his office where she went pursuant to his directive. Thus, her materials indicate that Bass's abuse arose out of his job related

authority and circumstances that the law of this state and the school board operating under it created. For the board assigned her to that school and she was required to attend it and obey those placed over her, and in obeying his instructions to go to his office she was abused. Since the board endowed Bass with authority and control over the school and Bass exercised that authority to abuse plaintiff, it can be reasonably inferred, it seems to me, that the board's work of operating the school and controlling the children was very definitely involved in plaintiff's abuse. That the board did not authorize Bass's wrongful act is beside the point, as only criminals such as the Mafia hire people to do wrong; and those who conduct their business through others are as accountable for their employees' mishaps as they are entitled to profit from their beneficial acts. This decision ironically and unjustly would leave beyond the law's pale the rights of all children of this state who daily follow the law's mandate and submit themselves to the dominion of school, kindergarten and day care officials and suffer because of it. I do not believe the law requires any such thing.

I also am of the opinion that it was error to dismiss the claim against Superintendent Smith for negligently investigating the report of Bass's past sexual abuses. For defendant's materials indicate that though his reported activities and tendencies were most serious for one having control of small children, only a haphazard, inept, token investigation was conducted; indeed, instead of establishing as a matter of law that the investigation was accomplished with either diligence or due care, they support the inference, in my view, that it was negligently conducted.